## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is entered into as of November ___, 2011, by and among Soffron Holdings LLC ("**Soffron**"); Timothy Sheehan ("**Sheehan**"); Brewery Properties Group, LLC ("**BPG**"); Mercury Brewing and Distribution Company, Inc. ("**Mercury**"); Robert Martin ("**Martin**"); Todd Darling ("**Darling**"); George Darling; Marla Darling; Peter McAllister ("**McAllister**"); Maureen McAllister; Matt Pieniazek; Scott Stikeleather; Frank Cunningham; Anne Black; Ronald L. Rosenfield; Warren Kelly; Rich Manders ("**Manders**"); Carl Perdue; and People's United Bank, successor by merger to Danversbank (the "**Bank**") (together, the "**Parties**").

### *Recitals*:

A.    On or about January 15, 2009, pursuant to a Bond Purchase Agreement and a Loan and Trust Agreement between BPG, Mercury, and the Bank (collectively, the "**Loan Agreement**"), BPG and Mercury borrowed $1,980,000 from the Bank through the issuance of bonds (the "**Loan**") and became obligated to repay that amount to the initial purchaser of the bonds, Five Conant Street Investment Corp.

B.    On July 15, 2009, Darling and Martin executed personal guarantees of BPG's and Mercury's obligations under the Loan Agreement, and McAllister delivered a $250,000.00 completion guarantee.

C.    The purpose of the Loan was to provide funding for the construction of a brewery at 2 Soffron Lane, Ipswich, Massachusetts (the "**Project**"). BPG was to own the real estate and improvements (the "**Property**"), and Mercury was to lease the Property and operate the brewery.

D.    On or about November 1, 2008, BPG entered into a lease agreement with Mercury;

E.    The Loan is secured by a first-priority security interest on the Property.

F.    On or about September 1, 2010, Soffron purchased all of the bonds and is currently the holder of all of the obligations of BPG, Mercury, Darling, McAllister, and Martin under the Loan Agreement.

G.    BPG is in default under the Loan Agreement.

H.    In July 2010, Mercury commenced suit against BPG in the Essex County Superior Court (the "**State Court**") alleging, *inter alia*, that BPG breached its contract to complete construction of the brewery, and BPG counterclaimed for Mercury's alleged failure to pay rent. BPG then removed the case to the United States Bankruptcy Court by commencing an Adversary Proceeding (Adv. Proc. No. 11-01161) (collectively the "**Rent Action**").

I.    On March 11, 2011, the Bank, in its role as Trustee under the Loan Agreement, and on behalf of the sole bond owner, Soffron, served demand notices on BPG, Mercury and the guarantors of the debt. On April 20, 2011, the Bank, in its role as Trustee under the Loan

Agreement, and on behalf of the sole bond owner, Soffron, initiated foreclosure proceedings against BPG by serving foreclosure notices.

J.     On May 3, 2011 (the "**Petition Date**"), BPG filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**") thereby commencing its Chapter 11 case (the "**Bankruptcy Case**").

K.     On May 6, 2011, BPG filed its Chapter 11 Plan of Reorganization (the "**Plan**"), and its Disclosure Statement in connection with the Plan.

L.     The Parties have determined to resolve certain claims as set forth below.

NOW, THEREFORE, in consideration of all of the terms and conditions of this Agreement, the Parties agree as follows:

1.     **Bankruptcy Court Approval**.   The Parties acknowledge that BPG is a debtor in the Bankruptcy Case and, as such, this Agreement is subject to the approval of the Bankruptcy Court.  BPG  represents and warrants that it will exercise its good faith best efforts to procure approval of this Agreement by the Bankruptcy Court as described in Section 2 of this Agreement as soon as is practicable in accordance with the requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.  The Parties understand and agree that this Agreement shall be effective and will be performed by the Parties once the Plan of Reorganization (defined herein) has been confirmed by order of the Bankruptcy Court (the "**Confirmation Order**")[1], it also being understood among the Parties that this Agreement shall be void, and of no further force and effect, if the Confirmation Order has not been entered on or before December 31, 2011 (the "**Confirmation Deadline**").  None of the Parties and none of the promises, consideration or other provisions of this Agreement are severable from the Agreement unless expressly agreed in a separate writing signed by all Parties to be bound by such amended or modified agreement. The Confirmation Order (defined herein) contains specific findings of fact and conclusions of law concerning the approval by the Bankruptcy Court of this Agreement, and upon the entry of the Confirmation Order, this Agreement shall be deemed approved and so ordered by the Bankruptcy Court.

2.     **Disclosure Statement and Plan of Reorganization**.   To effectuate the terms of this Agreement, BPG will file in the Bankruptcy Court an Amended Disclosure Statement and Plan of Reorganization, in the same form as the attached Exhibit L and Exhibit M, respectively. Among other provisions, the Plan of Reorganization shall provide for the transfer of the Property from BPG to Soffron free and clear of liens, claims, and other encumbrances ("**Liens**") pursuant to Section 1123(a)(5)(D) of the Bankruptcy Code in exchange for the consideration identified and described in this Agreement, including without limitation, a credit against the Loan, general and specific releases and covenants not to sue of the Parties as set forth in the exhibits, and other good and valuable consideration. The Plan of Reorganization shall provide additionally for the liquidation by BPG of certain claims against third parties for the benefit of BPG's creditors, and

---

[1] Once this agreement is fully executed by all parties and the Contractor Releases have been fully executed, the Parties acknowledge and agree that they are bound by the provisions of this Agreement pending the entry of the Confirmation Order.

for BPG to retain the Wardley Claims (as hereinafter defined) for the purpose of prosecuting those claims after the confirmation of the Plan of Reorganization.

3.    **Execution of Settlement Documents**.   At the Closing (as defined in Section 4, below), the Parties shall execute and deliver to each other each of the following settlement documents (the "**Settlement Documents**"):

3.1    Quitclaim Deed from BPG to Soffron conveying the real estate to Soffron (the "**Deed**"), attached hereto as Exhibit A;

3.2    Bill of Sale from BPG conveying personal property assets from BPG to Soffron (the "**Bill of Sale**"), attached hereto as Exhibit B-1, and a General Assignment of Intangible Personal Property (the "**General Assignment of Intangible Personal Property**"), attached hereto as Exhibit B-2, which Bill of Sale and General Assignment of Intangible Personal Property shall each exclude the Wardley Claims (hereinafter defined);

3.3    Assignment of Mercury Stock (the "**Assignment of Mercury Stock**") evidencing the transfer and assignment by the Assigning Members (defined in Section 9 of this Agreement) of all of their shares of preferred stock of Mercury to Soffron or its designee, attached hereto as Exhibit C;

3.4    Surrender of Brewery Food Group, LLC Interests (the "**Surrender of Brewery Food Group, LLC Interests**") evidencing the surrender by Todd Darling of all of his membership interests in Brewery Food Group, LLC to Brewery Food Group, LLC, attached hereto as Exhibit D;

3.5    Surrender of BPG Interests (the "**Surrender of BPG Interests**") evidencing the surrender by Robert Martin of all of his ownership interest in BPG, attached hereto as Exhibit E;

3.6    General Releases by BPG and each of its members in favor of Soffron, Sheehan, Mercury, Martin, the Bank and the Contractors (as defined in Section 7.1 of this Agreement) except for (i) certain claims expressly reserved, pursuant to Section 9 of this Agreement, by Manders against Martin, and by Martin and Darling against each other, and (ii) claims of BPG arising out of Martin's breach of the provisions of Section 13 of this Agreement (the "**BPG Releases**"), attached hereto as Exhibit F-1 through F-14;

3.7    General Release by Martin in favor of BPG and its members (the "**Martin Release**"), attached hereto as Exhibit G;

3.8    General Release by Mercury in favor of BPG and its members (the "**Mercury Release**"), attached hereto as Exhibit H;

3.9    Agreements and General Releases in favor of BPG (and its members), Soffron (and its members), the Bank, Mercury and Martin by the Contractors (the "**Contractor Releases**") described in Section 7.1 of this Agreement and substantially in the form attached hereto as Exhibit I-1 through I-11, provided, however, that the amount of the "Allowed Claim"

3

set forth in any Contractor Release may change if Soffron negotiates such different amount with any particular Contractor and Soffron funds the payment of 100% of such Allowed Amount..

3.10    Covenant Not to Sue by Soffron in favor of BPG, Darling and McAllister of any claims arising out of the Loan Agreement and any Guarantees thereof, attached hereto as Exhibit J (the "**Soffron Covenant Not to Sue**").

3.11    Covenant Not to Sue by the Bank and in favor of BPG, Darling and McAllister of any claims arising out of (i) the Loan Agreement and any Guarantees thereof, and (ii) any Guarantees of the indebtedness of Mercury to the Bank (the "**Bank Covenant Not to Sue**"), attached hereto as Exhibit K;

3.12    Form of First Amended Disclosure Statement as contemplated by Section 2 of this Agreement (the "**Amended Disclosure Statement**"), substantially in the form attached hereto as Exhibit L, provided, however, that any changes to the Amended Disclosure Statement must be acceptable to, and approved by, Soffron;

3.13    Form of Plan of Reorganization as contemplated by Section 2 of this Agreement (the "**Plan of Reorganization**"), substantially in the form attached hereto as Exhibit M, provided, however, that any changes to the Plan of Reorganization must be acceptable to, and approved by, Soffron;

3.14    Form of Order Confirming Plan of Reorganization (the "**Confirmation Order**"), substantially in the form attached as Exhibit N, provided, however, that any changes to the Confirmation Order must be acceptable to, and approved by, Soffron;

3.15    Stipulation of Dismissal With Prejudice of the Rent Action (the "**Dismissal of Rent Action**"), attached hereto as Exhibit O.

4.    **Closing**.  The Closing shall take place at the offices of counsel for Soffron within three business days following the first date that the order confirming BPG's Amended Plan of Reorganization becomes final and non-appealable, or such earlier date agreed to by the Parties (the "**Closing**"). The date on which the Closing occurs is referred to as the "**Closing Date.**" For purposes of this Agreement and the Plan of Reorganization, the Closing shall not have been deemed to occur unless and until the Agreement and the Settlement Documents have been executed and delivered by all parties thereto.

5.    **Transfer of the Property to Soffron**.

5.1.    Delivery of Documents of Transfer.  At the Closing, BPG shall transfer the Transferred Assets (as that term is defined in the Plan of Reorganization attached hereto as Exhibit M) free and clear of Liens.  Further, BPG shall deliver the fully executed Deed, in the same form as the attached Exhibit A, conveying to Soffron the Property in fee simple absolute. At the Closing, BPG shall also deliver the fully executed Bill of Sale, in the same form as the attached Exhibit B-1, and the General Assignment of Intangible Personal Property, in the same form as the attached Exhibit B-2, conveying to Soffron all personal property located at or otherwise associated with the Property. Pursuant to the Plan of Reorganization and Sections 363 and 1123(a)(5)(D) of the Bankruptcy Code and the Confirmation Order, the transfer of the

4

Property and the personal property identified in the Bill of Sale and the General Assignment of Intangible Personal Property shall be free and clear of any Liens.

  5.2. <u>Allocation of Purchase Price</u>. Promptly following the Closing Date, the Purchase Price shall be allocated among the Purchased Assets in such amounts as shall be specified in <u>Schedule 5.2</u> to be prepared by Soffron and reasonably acceptable to BPG, which allocation shall be binding upon Soffron and BPG, each of which agrees to report the effect of the transactions contemplated hereby on all applicable tax returns or filings in a manner consistent with such schedule.

  5.3. <u>Representations and Warranties of BPG</u>.

   5.3.1 <u>Organization and Standing</u>. BPG is a limited liability company organized under the laws of the Commonwealth of Massachusetts. BPG is not a "foreign person" within the meaning of Section 1445(f) of the Bankruptcy Code.

   5.3.2 <u>Authority of BPG</u>. The execution and delivery by BPG of this Agreement and the Settlement Documents and the consummation of the transactions contemplated hereby and thereby have been duly and validly authorized by all necessary action, and this Agreement constitutes, and each of the Settlement Documents upon execution will constitute, the legal, valid and binding obligation of BPG enforceable in accordance with its terms, subject to entry of the Confirmation Order by the Bankruptcy Court and such Confirmation Order becoming final and non-appealable, and subject to the receipt of the consents, waivers and approvals specified on <u>Schedule 5.3</u>, if any.

   5.3.3 <u>No Conflict or Violation</u>. Upon entry of the Confirmation Order, the execution, delivery and performance by BPG of this Agreement and all Settlement Documents do not and will not violate or conflict with or result in a breach of or constitute (with due notice or lapse of time or both) a default under (a) BPG's organizational documents, (b) any agreement, contract or instrument to which BPG is a party, or (c) any provision of law, or any order, judgment or decree of any court or other Governmental Agency applicable to BPG.

   5.3.4 <u>Consents and Approvals</u>. No consent, approval, order or authorization of, or registration, declaration or filing with, any Governmental Agency is required to be obtained or made by or with respect to BPG in connection with the execution and delivery of this Agreement or any of the Settlement Documents by BPG or the performance by BPG of the transactions contemplated hereby or thereby to be performed by BPG, except for approval of the Bankruptcy Court  and the consents, waivers and approvals specified on <u>Schedule 5.3</u>, if any.

   5.3.5 <u>Labor Relations</u>. BPG has no employees and is not a party to any collective bargaining agreement.

   5.3.6 <u>Environmental Compliance</u>. Except for any notice that may have been given to Martin and not shared with BPG's co-manager or any other BPG members, BPG has not received any notice of violation of any environmental law, rule or regulation to which the Purchased Assets are subject. Except for any knowledge Martin had that has not been shared with BPG's co-manager or any other BPG members, BPG represents that to its knowledge there

has been no violation of environmental laws by BPG or relating to the Property since BPG purchased the Property.

    5.3.7   <u>Representation and Warranty of BPG and Its Members</u>. BPG represents and warrants that, except for any actions taken by Martin, neither BPG nor any of its members has removed from the Property, any personal property associated with, or located at, the Property.  Each member of BPG (other than Martin) severally, but not jointly, represents and warrants that he or she has not removed from the Property any personal property associated with or located at the Property.

    5.4.  <u>Covenants of BPG</u>.

    5.4.1   BPG will file an Amended Disclosure Statement with the Bankruptcy Court on or before November 29, 2011 seeking approval of the adequacy of the information contained in the Amended Disclosure Statement, and BPG will devote its good faith best efforts to obtain approval of such Amended Disclosure Statement as soon as reasonably practicable.

    5.4.2   BPG will file an Amended Plan of Reorganization with the Bankruptcy Court on or before November 29, 2011, seeking among other things the approval of the terms of this Agreement and the other Settlement Documents, in a form reasonably acceptable to Soffron.

    5.4.3   As soon as is reasonably practicable, BPG shall obtain approval of the Confirmation Order, which order shall:  (i) approve the sale of the Property free and clear of all Liens and other interests pursuant to the Bankruptcy Code; (ii) provide that Soffron is a "good faith purchaser" and is afforded all protections granted under the Bankruptcy Code; (iii) provide that Soffron shall not be deemed a successor to BPG for any purpose, including but not limited to any and all liabilities or claims of any kind whatsoever that may exist against BPG or its Affiliates; and (iv) provide that the stay of FRBP 6004(g) shall not apply to the transfer of the Purchased Assets.

    5.4.4   As promptly as practicable, BPG will provide Soffron with copies of all motions, applications and supporting papers prepared by BPG in connection with this Agreement (including forms of orders and notices to interested parties) prior to the filing thereof in the Case.

    5.4.5   BPG will maintain the property insurance currently covering the Property through the Closing Date.

   5.5 <u>Conditions to Soffron's Obligations</u>.  Each of the following are conditions precedent to Soffron's obligations to perform hereunder, and Soffron shall have no obligation unless each condition is satisfied.

    5.5.1   <u>Representations and Warranties</u>.  The representations and warranties of BPG contained in this Agreement, the Settlement Documents and any exhibits, schedules or documents delivered pursuant hereto or thereto, shall be true on and as of the

Closing Date in all material respects as though such representations and warranties were made on and as of the Closing Date.

5.5.2    Consents. BPG shall have obtained all consents of any third parties to the transactions contemplated by this Agreement, including without limitation, all consents necessary to validly and effectively transfer and assign all Property (including without limitation, the Assigned Contracts and Intellectual Property) to Soffron. In addition, BPG shall have obtained all necessary approvals, permits, licenses, orders and consents from the appropriate Government Agencies and other third parties (including but not limited to, antitrust authorities), for the transfer of the Property to Soffron without giving any such third party default or termination rights, all in form and substance satisfactory to Soffron.

5.5.3    Approval of Amended Disclosure Statement and Entry of the Confirmation Order. (i) The Bankruptcy Court shall have approved the Amended Disclosure Statement, which shall be subject to Soffron's prior approval in its reasonable discretion, (ii) the Bankruptcy Court shall have entered the Confirmation Order, which shall be subject to Soffron's prior approval, and (iii) the order approving the Amended Disclosure Statement and the Confirmation Order, as entered by the Bankruptcy Court, shall not be subject to a stay. The Confirmation Order shall not modify the terms and conditions of this Agreement.

5.5.4    Condition of Property; No Adverse Change. Soffron shall be permitted to conduct a walk through of the Property on or immediately before the Closing Date, and the Property shall be in substantially the same or better condition on the Closing Date as it was on the Petition Date, reasonable wear and tear excluded and there shall not have occurred, in Soffron' reasonable opinion, any material adverse change in the Property.

5.5.5    Closing Deliveries. On or before the Closing: (i) the Deed, Bill of Sale, and General Assignment of Intangible Personal Property shall have been executed and delivered by BPG; (ii) the Surrender of Brewery Food Group, LLC Interests shall have been executed and delivered by Todd Darling; (ii) the Cunningham and Black Assignment of Mercury Stock shall have been executed and delivered to Soffron, and Mercury shall have consented to the transfer of such preferred stock; (iii) the Surrender of BPG Interests shall have been executed and delivered by Robert Martin; (iv) the Contractor Releases shall have been executed and delivered to Soffron by the Contractors; (v) the BPG Releases shall have been executed and delivered by BPG and its members; and (vi) the Assignment of Mercury Stock shall have been executed by the Assigning Members and delivered to Soffron, and Mercury shall have consented to the transfer of such preferred stock.

5.6    BPG's Deliveries at Closing. At Closing, BPG shall deliver (or cause to be delivered) to Soffron the following:

a duly executed Quitclaim Deed, a duly executed Bill of Sale, a General Assignment of Intangible Personal Property and such other documents or instruments of transfer necessary to vest in Soffron full and complete title to the Property, free and clear of all Liens and other interests, pursuant to the Bankruptcy Code on the Closing Date, in the form attached hereto as Exhibit A, Exhibit B-1, and Exhibit B-2, respectively

with respect to patents, trademarks and other Intellectual Property, assignments in recordable form and sufficient to record the assignment of all patents, trademarks and other Intellectual Property to be transferred to Soffron pursuant to this Agreement

any and all consents required to be obtained by BPG pursuant to this Agreement.

5.7     Representations and Warranties of Soffron:

5.7.1     Organization and Standing.  Soffron is a limited liability company organized under the laws of the Commonwealth of Massachusetts.  Soffron is not a "foreign person" within the meaning of Section 1445(f) of the Bankruptcy Code.

5.7.2     Authority of Soffron.  The execution and delivery by Soffron of this Agreement and the Settlement Documents and the consummation of the transactions contemplated hereby and thereby have been duly and validly authorized by all necessary action, and this Agreement constitutes, and each of the Settlement Documents upon execution will constitute, the legal, valid and binding obligation of Soffron enforceable in accordance with its terms, subject to the receipt of the consents, waivers and approvals specified on Schedule 5.7, if any.

5.7.3     No Conflict or Violation.  The execution, delivery and performance by Soffron of this Agreement and all Settlement Documents do not and will not violate or conflict with or result in a breach of or constitute (with due notice or lapse of time or both) a default under (a) Soffron's organizational documents, (b) any agreement, contract or instrument to which Soffron is a party, or (d) any provision of law, or any order, judgment or decree of any court or other Governmental Agency applicable to Soffron.

5.7.4     Consents and Approvals.  No consent, approval, order or authorization of, or registration, declaration or filing with, any Governmental Agency is required to be obtained or made by or with respect to Soffron in connection with the execution and delivery of this Agreement or any of the Settlement Documents by Soffron or the performance by Soffron of the transactions contemplated hereby or thereby to be performed by Soffron, except for the consents, waivers and approvals specified on Schedule 5.7, if any.

5.8     Representations and Warranties of Mercury.

5.8.1     Organization and Standing.  Mercury is a corporation organized under the laws of the Commonwealth of Massachusetts.  Mercury is not a "foreign person" within the meaning of Section 1445(f) of the Bankruptcy Code.

5.8.2.     Authority of Mercury.  The execution and delivery by Mercury of this Agreement and the Settlement Documents and the consummation of the transactions contemplated hereby and thereby have been duly and validly authorized by all necessary action, and this Agreement constitutes, and each of the Settlement Documents upon execution will constitute, the legal, valid and binding obligation of Mercury enforceable in accordance with its terms, subject to the receipt of the consents, waivers and approvals specified on Schedule 5.8, if any.

5.8.3      No Conflict or Violation.   The execution, delivery and performance by Mercury of this Agreement and all Settlement Documents do not and will not violate or conflict with or result in a breach of or constitute (with due notice or lapse of time or both) a default under (a) Mercury's organizational documents, (b) any agreement, contract or instrument to which Mercury is a party, or (d) any provision of law, or any order, judgment or decree of any court or other Governmental Agency applicable to Mercury.

5.8.4      Consents and Approvals.   No consent, approval, order or authorization of, or registration, declaration or filing with, any Governmental Agency is required to be obtained or made by or with respect to Mercury in connection with the execution and delivery of this Agreement or any of the Settlement Documents by Mercury or the performance by Mercury of the transactions contemplated hereby or thereby to be performed by Mercury, except for the consents, waivers and approvals specified on Schedule 5.9, if any.

5.9      Conditions to BPG's Obligations.

5.9.1      Representations and Warranties.   The representations and warranties of Soffron and Mercury contained in this Agreement, the Settlement Documents and any exhibits, schedules or documents delivered pursuant hereto or thereto, shall be true on and as of the Closing Date in all material respects as though such representations and warranties were made on and as of the Closing Date.

5.9.2      Consents.   Soffron and Mercury shall have obtained all consents of any third parties to the transactions contemplated by this Agreement.

5.9.3      Approval of Amended Disclosure Statement and Entry of the Confirmation Order.   (i) The Bankruptcy Court shall have approved the Amended Disclosure Statement, (ii) the Bankruptcy Court shall have entered the Confirmation Order, and (iii) the order approving the Amended Disclosure Statement and the Confirmation Order, as entered by the Bankruptcy Court, shall not be subject to a stay.   The Confirmation Order shall not modify the terms and conditions of this Agreement.   In the event that the Bankruptcy Court enters a Confirmation Order that does not provide for the approval of Sections 8.01, 8.03 and 8.04 of the Plan of Reorganization, the condition set forth in this Section 5.9.3(ii) shall nonetheless be deemed to have been satisfied.

5.9.4      Closing Deliveries.   On or before the Closing, (i) the Surrender of BPG Interests and the Martin Release shall have been executed and delivered by Martin, (ii) the Mercury Release shall have been executed and delivered by Mercury, (iii) the Contractor Releases shall have been executed and delivered by the Contractors, (iv) the Soffron Covenant Not to Sue shall have been executed and delivered by Soffron, and (v) the Bank Covenant Not to Sue shall have been executed and delivered by the Bank.

5.10      Survival of Representations and Warranties.   The representations of BPG and its members with respect to compliance with environmental law and removal of property shall survive the Closing and the consummation of the transactions contemplated hereby and thereby.

5.11      Taxes Related to Purchase of Assets.   The parties recognize and acknowledge that the sale, transfer, assignment and delivery of the Property are exempt under the Bankruptcy

Code and the Confirmation Order from all state and local transfer, recording, stamp or other similar transfer taxes (collectively, "Transaction Taxes") that may be imposed by reason of the sale, transfer, assignment and delivery of the Property pursuant to Section 1146 of the Bankruptcy Code. Transaction Taxes shall not include any Taxes for which BPG is responsible under Section 5.9. At the Closing, Soffron shall remit to BPG such properly completed resale exemption certificates and other similar certificates or instruments as are applicable to claim available exemptions from the payment of sales, transfer, use or other similar taxes under applicable law. Soffron and BPG shall cooperate in preparing such forms and will execute and deliver such affidavits and forms as are reasonably requested by the other party.

5.12    Personal Property Taxes. All outstanding personal property taxes on the Property shall be paid or assumed by Soffron.

5.13    Cooperation on Tax Matters. Soffron and BPG agree to furnish or cause to be furnished to each other, as promptly as practicable, such information and assistance relating to the Property as is reasonably necessary for the preparation and filing of any return, claim for refund or other required or optional filings relating to tax matters, for the preparation for and proof of facts during any tax audit, for the preparation for any tax protest, for the prosecution or defense of any suit or other proceeding relating to tax matters and for the answer of any governmental or regulatory inquiry relating to tax matters.

5.14    Conditions to Mercury's Obligations.

5.14.1    Representations and Warranties. The representations and warranties of Soffron and BPG contained in this Agreement, the Settlement Documents and any exhibits, schedules or documents delivered pursuant hereto or thereto, shall be true on and as of the Closing Date in all material respects as though such representations and warranties were made on and as of the Closing Date.

5.14.2    Consents. Soffron and BPG shall have obtained all consents of any third parties to the transactions contemplated by this Agreement.

5.14.3    Closing Deliveries. On or before the Closing, (i) the Assignment of Mercury Stock (see Section 9 hereof) and the Surrender of Brewery Food Group, LLC Interests (see Exhibit D) shall have been executed and delivered, (ii) the BPG Releases shall have been executed and delivered by BPG and each of its members, and (iii) the Contractor Releases shall have been executed and delivered by the Contractors.

6.    **Purchase Price for Property**. At the Closing, to evidence the consideration paid by Soffron for the Property, Soffron shall note a credit in the amount of $1,210,250 on the Loan. The Parties acknowledge and agree that, as of the date of this Agreement, Soffron's aggregate outstanding claim on the Loan is $2,846,042.06, comprised of outstanding principal [$1,810,594.92], interest [$135,796.08], late fees [$12,363] attorney fees and costs [$300,000], plus payments to the Contractors [$547,572.71] (provided, however, that the amount of the "Allowed Claim" set forth in any Contractor Release may change if Soffron negotiates such different amount with any particular Contractor), a payment to NYLAJO, LLC [$20,591], payment of outstanding real estate taxes [$18,124.35], and payment of outstanding utilities

[$6,000]. Therefore, it is understood and agreed by the Parties that, following the receipt by Soffron of the Property the deficiency balance on the Loan will be $1,640,792.06 (as may be adjusted as a result of any changes in the Allowed Amount paid to any Contractor), which shall be allowed in the Bankruptcy Case as a general unsecured claim; *provided, however,* that Soffron waives any right to distributions under the Plan of Reorganization on account of such general unsecured claim or otherwise from the Wardley Claims (except for its right to reimbursement for its payment of outstanding real estate taxes pursuant to Section 7.2 below).

7.    **Soffron Payments**.

7.1    Soffron Payment of Claims of Contractors. The following contractors: Breen & Sullivan Mechanical Services, Inc.; BES Electrical Contracting, Inc.; Bresnahan & Horrigan, Inc.; Danvers Door Company, Inc.; Richard T. Caram & Sons, Inc.; Thomas Hagan; CGV Services, LLC; Ken Ledbury d/b/a Green's Point Masonry; Geotechnical Services, Inc.; Kevin Lombard d/b/a Lombard Plumbing & Heating; and Michael Ganey (collectively, the "**Contractors**") have done work on the Property and have claims against BPG and the Property, and in exchange for the Contractor Releases identified in Section 3.9 of this Agreement, Soffron shall advance on the Loan at closing for payment to the Contractors the following amounts in full and complete satisfaction of all amounts due (including, without limitation, late fees, interest and attorneys fees or other costs of collection):   Breen & Sullivan Mechanical Services, Inc. [$41,983.00]; BES Electrical Contracting, Inc. [$21,005.37]; Bresnahan & Horrigan, Inc. [$41,600.00]; Danvers Door Company, Inc. [$25,140.00]; Richard T. Caram & Sons, Inc. [$103,813.92]; Thomas Hagan [$84,368.95]; CGV Services, LLC [$172,219.00]; Ken Ledbury d/b/a Green's Point Masonry [$26,143.00]; Geotechnical Services, Inc. [$4,988.96]; Kevin Lombard d/b/a Lombard Plumbing & Heating [$8,335.00]; and Michael Ganey [$5,000]. Soffron shall have no obligation to pay the Contractors until the Contractors have executed and delivered the Contractor Releases described in Section 3.9 of this Agreement and attached as Exhibit I-1 through I-11.

7.2    Soffron Payment of Tax Liens. On the Closing Date, Soffron shall pay $18,124.35 to the Town of Ipswich in payment of the outstanding tax Liens on the Property. If BPG obtains a recovery on the Wardley Claims (as defined herein), then BPG shall use the first 20% of any recovery, as it is received, to reimburse Soffron for its payment to the Town of Ipswich pursuant to this paragraph, such that payment of administrative expenses and reimbursement to Soffron are split on an 80%/20% pro rata basis (with 80% allocated to administrative expenses, and 20% allocated to reimbursement of Soffron).

7.3    Soffron Payment to NYLAJO, LLC. On the Closing Date, Soffron shall pay $20,591 to NYLAJO, LLC in full satisfaction of its claim against BPG.

8.    **Termination of Lease Agreement/Dismissal of Rent Action**.   The Lease Agreement dated November 1, 2008, by and between BPG, as lessor, and Mercury, as lessee (the "**Lease Agreement**"), shall be terminated as of the Closing, and neither BPG nor Mercury shall have any liability to each other arising out of such Lease Agreement. As soon as is practicable following the Closing, BPG and Mercury shall each cause their counsel in the Rent Action to seek the immediate dismissal of the Rent Action, with no further obligation or liability from BPG to Mercury or *vice versa.*

9.  **Transfer of Mercury Preferred Stock by Assigning Members**.   In consideration for the releases described in Section 11 herein, which consideration is deemed sufficient to constitute reasonably equivalent consideration, at Closing the following members of BPG will transfer and turn over their shares of Mercury preferred stock to Soffron or its designee:  Matt Pieniazek (6.25 preferred shares); Scott Stikeleather (3.5 preferred shares); George Darling (8 preferred shares); Marla Darling (8 preferred shares); Peter McAllister (2 preferred shares); and Ronald L. Rosenfield (3 preferred shares) (such members, collectively, the "**Assigning Members**").   Each Assigning Member warrants and represents to Soffron and Mercury that such Assigning Member has agreed to turn over and transfer all of such Assigning Member's shares in Mercury to Soffron or its designee. Additionally, the Assigning Members and Darling hereby represent and warrant that, except for the Mercury shares to be turned over and transferred to Soffron or its designee at Closing, they hold no direct or indirect interest in any shares of the Mercury stock or membership interests in PBD Group, LLC ("**PBD**"), and covenant that if, after the Closing, any Assigning Member discovers that he or she has any direct or indirect interest in or right to possession or ownership of any shares of Mercury stock or membership interests in PBD, then such Assigning Member will transfer and turn over such direct or indirect interest and right to possession or ownership in such shares of Mercury stock, and any dividends and distributions received thereon, to Soffron or its designee. For the sake of clarity, if any BPG member is determined to have a direct or indirect interest in PBD, that member shall, to the extent possible under PBD's governing documents, cause PBD's entire holdings of Mercury stock to be turned over to Soffron or its designee.

10.  **Transfer of Brewery Food Group, LLC and BPG Interests**.  In consideration for the releases described in Section 11 herein, which consideration is deemed sufficient to constitute reasonably equivalent consideration, Darling will execute and deliver at the Closing the Surrender of Brewery Food Group, LLC Interests, attached hereto as Exhibit D.  In consideration for the releases described in Section 11 herein and for other good and valuable consideration, which consideration is deemed sufficient to constitute reasonably equivalent consideration, Martin will execute and deliver at the Closing the Surrender of BPG Interests, attached hereto as Exhibit E.

11.  **Releases and Covenants Not to Sue**.  At or before the Closing, the Parties to the releases and covenants not to sue described in Sections 3.6 through 3.11 of this Agreement, inclusive, shall execute and deliver such releases and covenants not to sue. Notwithstanding any provision of this Settlement, or any of the exhibits hereto, (i) Soffron does not release and expressly reserves all rights and claims against Mercury and Martin, including without limitation, claims arising from the Loan Agreement, Martin's guarantee of the Loan, and/or the outstanding deficiency on the Loan, and (ii) Manders does not release and expressly reserves all rights and claims against Darling and Martin, (iii) Darling and Martin do not release and expressly reserve all rights and claims against one another, but solely to the extent arising out of the claims by Manders against either or both of them, (iv) the Bank does not release, and expressly reserves, all rights and claims against Mercury, Brewery Food Group, LLC, Martin and Sheehan, and (v) BPG does not release and expressly reserves all rights and claims against Martin, but solely to the extent arising out of Martin's breach of any of the representations or warranties set forth in Section 13 hereof.

12

12.    **Representations and Warranties**.    The Parties hereby make the following representations and warranties as of the date hereof and as of the Closing Date.

12.1    No Assignment of Claims.  Each Party warrants and represents that such Party has not sold, assigned, conveyed, pledged, encumbered, or otherwise in any way transferred to any Person any Claim released by such Party, or which is subject to a covenant not to sue, pursuant to this Agreement.

12.2    Independent Advice.  Each Party warrants and represents that it has received or had the opportunity to obtain independent legal advice from such Party's attorney with respect to the rights and obligations arising from, and the advisability of executing, this Agreement.

12.3    Good Standing and Authority.  Each Party that is not a natural person warrants and represents that it is duly organized and validly existing under the laws of the state of its registration.  Each such entity further warrants and represents that it has full power and authority to enter into this Agreement and the Settlement Documents and carry out the provisions hereof.

13.    **Specific Representations and Warranties of Martin**.  Martin represents and warrants that: (i) he has not caused BPG to release any claim that BPG has against Frank Wardley, Peter Pitman and/or Pitman & Wardley Architects (together, "**Wardley**"; all claims and causes of action of BPG against Wardley are referred to herein as the **"Wardley Claims"**); (ii) he has not provided a written or recorded statement or affidavit to Wardley, or otherwise provided material assistance to Wardley, in the defense of potential claims against Wardley held by BPG; (iii) he does not possess any documents pertaining to the Project beyond documents that have been provided to Mercury and produced for inspection by BPG prior to the date of this Agreement; (iv) that he shall take no action with respect to the claims of BPG against Wardley from and after the date hereof; (v) he will reasonably cooperate with BPG in prosecuting any claims against Wardley and/or Pitman & Wardley; (vi) he will not provide a written or recorded statement or affidavit to Wardley or otherwise provide material assistance to Wardley, in the defense of BPG's claims against Wardley; (vii) he has not received any notice of violation of any environmental law, rule or regulation to which the Purchased Assets are subject; (viii) he is not aware of any violation of environmental laws relating to the Property since BPG purchased the Property; (ix) he has not removed from the Property, any personal property associated with, or located at, the Property; and (x) he has reviewed the Schedules of Assets and Liabilities of BPG filed in the Bankruptcy Case, and that, to the best of his knowledge, they set forth all of the creditors of the Debtor as of the date hereof.

14.    **Survival of Acknowledgements, Warranties and Representations**.    All acknowledgments, warranties and representations set forth in this Agreement and the Settlement Documents shall survive the execution and delivery of this Agreement and the Settlement Documents.

15.    **No Assignment of Agreement**.  Unless expressly stated in this Agreement and in the Settlement Documents, no Party may assign any rights conferred by or obligations imposed under this Agreement or the Settlement Documents, in whole or in part, outright or by way of collateral assignment, without the written consent of the other Parties (which consent may be withheld for any reason or no reason).

13

16.    **General Provisions**.

16.1    <u>Binding Effect</u>.  This Agreement shall be binding upon the Parties' respective successors and assigns.

16.2    <u>Choice of Law</u>.  This Agreement shall be governed by and construed in accordance with the internal substantive laws of the Commonwealth of Massachusetts as applied to contracts made and wholly performed within the Commonwealth of Massachusetts without regard to its principles of choice of law.

16.3    <u>Selection of Forum</u>.  The Parties agree that exclusive venue for any lawsuit arising out of this Agreement shall be the Bankruptcy Court.  The Parties irrevocably consent to the jurisdiction of the Bankruptcy Court and waive any objections they may now or hereafter have to venue therein.

16.4    <u>Expenses</u>.  Each Party to this Agreement and the Settlement Documents shall bear their own expenses incurred in connection with the negotiation and preparation of this Agreement and the Settlement Documents.  The preceding sentence shall not be construed to waive, decrease or otherwise alter Soffron's rights to include its costs of collection towards the amounts due in connection with the Loan Agreement.

16.5    <u>Breach</u>.  In the event that one of the Parties to this Agreement and the Settlement Documents breaches this Agreement or any of the Settlement Documents, such breaching Party shall be responsible for the payment of the reasonable attorney fees, expenses and other costs and expenses incurred by the non-breaching Party in its efforts to enforce this Agreement and the Settlement Documents.

16.6    <u>No Oral Modification</u>.  No provision of this Agreement or the Settlement Documents can be waived, modified, amended, or supplemented except in a writing that expressly references this Agreement and the Settlement Documents and is signed by an authorized representative of each Party to be bound.

16.7    <u>No Construction Against Drafter</u>.  Because all Parties have participated in drafting, reviewing, and editing the language of this Agreement and the Settlement Documents, no presumption for or against any Party arising out of drafting all or any part of this Agreement and the Settlement Documents shall be applied in any action whatsoever.

16.8    <u>No Third-Party Beneficiaries</u>.  Except as expressly set forth herein, the Parties agree that there are no third-party beneficiaries of any kind to this Agreement or the Settlement Documents.

16.9    <u>Integrated Agreement</u>.  This Agreement, the Settlement Documents and the Plan of Reorganization collectively constitute the entire understanding and contract between the Parties with respect to the subject matter referred to herein.  Any and all other representations, understandings, or agreements, whether oral, written, or implied, are merged into and superseded by the terms of this Agreement, the Settlement Documents and the Plan of Reorganization. Notwithstanding the foregoing, nothing herein shall be deemed to supersede, replace or discharge:  (i) the Loan Agreement and/or any guarantees executed in connection with the Loan

14

Agreement, which shall remain in full force and effect (provided, however, it is understood and agreed that the obligations of BPG, Darling and McAllister with respect to the Loan Agreement or any guarantees hereof will be governed by the terms of the Plan of Reorganization, Confirmation Order, this Settlement Agreement and the Settlement Documents); or (ii) any separate agreement between or among Soffron, Sheehan, Mercury and Martin relating to the business, ownership and operation of Mercury and/or leasing of the Property.

     16.10 <u>Headings</u>.  The subject headings used in this Agreement and the Settlement Documents are included for purposes of convenience only, and shall not affect the construction or interpretation of any provisions of this document.

     16.11 <u>Notice</u>.  Any notice required or desired to be given hereunder shall be in writing and shall be served as provided herein either by an air courier service (such as FedEx, DHL or UPS) or by personal delivery.  Notice may be served by email, if a confirming copy of the notice is also served by air courier service or hand-served.  Service of any notice shall be deemed complete (i) in the case of notice via personal delivery, actual receipt before 5:00 p.m. at the location of delivery (and shall be deemed complete on the following day if actually received after 5:00 p.m. at the location of delivery); or (ii) in the case of notice via air courier, the third day following delivery of the notice to an air courier service with all costs fully prepaid.  In order to be effective, any notice must be served upon and received by both the Party and the persons designated to receive a copy thereof at the addresses set forth below:

     If to Soffron:

        Soffron Holdings, LLC
        34 Main Street
        Wenham, MA  01984

     With a copy to:

        James L. Messenger, Esq.
        LeClairRyan, PC
        One International Place, 11th Floor
        Boston, MA  02110

     If to the Bank:

        Alan Byrne
        One Conant Street
        Danvers, Massachusetts 01923

     With a copy to:

        James H. Lerner, Esq.
        Goulston & Storrs, P.C.
        400 Atlantic Avenue
        Boston, MA  02110

If to BPG:

    Brewery Properties Group, LLC
    c/o Ronald L. Rosenfield, Esq.
    526 Superior Avenue East, Suite 440
    Cleveland, OH 44114

With a copy to:

    Michael J. Goldberg, Esq.
    Casner & Edwards, LLP
    303 Congress Street
    Boston, MA  02210
    Email: goldberg@casneredwards.com

If to Mercury:

    Robert Martin, President
    Mercury Brewing and Distribution Company, Inc.
    23 Hayward Street
    Ipswich, MA  01938

With a copy to:

    Jeffrey C. Doherty, Esq.
    MacLean Holloway Doherty Ardiff & Morse, P.C.
    8 Essex Center Drive
    Peabody, MA  01960

If to Martin:

    Robert Martin, President
    221R Washington Street
    Topsfield, MA  01983

With a copy to:

    Leonard F. Femino, Esq.
    Alexander & Femino
    1 School Street
    Beverly, MA  01915

If to Todd Darling:

    Todd Darling
    18 Sheffield Road
    Boxford, MA  01921

If to the BPG Members:

    Matt Pieniazek
    36 Marlboro Street
    Newburyport, MA  01950

    Scott Stikeleather
    10 Oxbow Road
    Canton, MA  02021

    George Darling
    189 Country Club Way
    Ipswich, MA  01938

    Marla Darling
    18 Sheffield Road
    Boxford, MA  01921

    Peter McAllister
    17 Cedar Street
    Boxford, MA  01921

    Maureen McAllister
    17 Cedar Street
    Boxford, MA  01921

    Frank Cunningham
    56 Margaret Street
    Arlington, MA  02174

    Anne Black
    56 Margaret Street
    Arlington, MA  02174

    Ronald L. Rosenfield
    4362 Acacia Road
    South Euclid, OH  44121

Warren Kelly
5 Bouchard Street
Middleton, MA  01949

Rich Manders
Boulevard Street
West Hartford, CT

Carl Perdue
248 Albion Street, #236
Wakefield, MA  01880

16.12  Execution in Counterparts.  This Agreement and the Settlement Documents may be executed and delivered in any number of counterparts.  When each Party has signed and delivered at least one counterpart to all other Parties, each counterpart shall be deemed an original and all counterparts, taken together, shall constitute one and the same agreement, which shall be binding and effective on the Parties hereto.  Neither this Agreement nor the Settlement Documents shall become binding on the Parties hereto unless they have been executed by authorized representatives of all Parties, approved by the Bankruptcy Court through the confirmation of the Plan of Reorganization, and the occurrence of the Closing.

IN WITNESS WHEREOF, the Parties have approved and executed this Settlement Agreement and the Settlement Documents as of the Closing Date.

## Table of Exhibits

Exhibits:

| | |
|---|---|
| A | Deed |
| B-1 to B-2 | Bill of Sale and Assignment of Intangible Personal Property |
| C | Assignments of Mercury Stock |
| D | Surrender of Brewery Food Group, LLC Interests |
| E | Surrender of BPG Interests |
| F-1 to F-14 | BPG Releases |
| G | Martin Release |
| H | Mercury Release |
| I-1 to I-11 | Contractor Releases |
| J | Soffron Covenant Not to Sue |
| K | Bank Covenant Not to Sue |
| L | Amended Disclosure Statement |
| M | Plan of Reorganization |
| N | Confirmation Order |
| O | Dismissal of Rent Action |

*[SIGNATURES APPEAR ON THE NEXT THREE PAGES]*

SOFFRON HOLDINGS, LLC                TIMOTHY SHEEHAN

_____              _____
By:                                  By:
Date:                                Date:


MERCURY BREWING AND                  BREWERY PROPERTIES GROUP, LLC
DISTRIBUTION COMPANY, INC.

_____      _____
By:                                  By:
Date:                                Date:


ROBERT MARTIN                        TODD DARLING

_____      _____
By:                                  By:
Date:                                Date:


MARLA DARLING                        MATT PIENIAZEK

_____      _____
By:                                  By:
Date:                                Date:

SCOTT STIKELEATHER                    GEORGE DARLING


_____       _____

By:                                   By:
Date:                                 Date:



FRANK CUNNINGHAM                       RONALD L. ROSENFIELD


_____       _____

By:                                   By:
Date:                                 Date:



MAUREEN MCALLISTER                     PETER MCALLISTER


_____       _____

By:                                   By:
Date:                                 Date:



RICH MANDERS                           ANNE BLACK


_____       _____

By:                                   By:
Date:                                 Date:


21

PEOPLE'S UNITED BANK,
successor to DANVERSBANK,

CARL PERDUE

_____

By:

Date:

_____

By:

Date:

WARREN KELLY

_____

By:

Date: